[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE MOTION TO DISSOLVE TEMPORARY: INJUNCTION
Plaintiff obtained an ex parte temporary injunction in this matter and defendant has moved to dissolve it.
Facts
Prior to July 1, 1995, our workers' compensation law provided that where an employee had a previous permanent disability, an employer or its insurer could transfer all of its workers' compensation liability to the Second Injury and Compensation Assurance Fund (the "Fund" when the employee sustained a second injury which was made "materially and substantially greater than the disability that would have resulted from the second injury alone." C.G.S. § 31-349 (rev. to 1994). On that date the legislature amended that statute. P.A. 95-277. CT Page 14059
Under the prior law, as a condition precedent to transfer of liability, the employer or insurer was required to pay the first one hundred and four weeks of disability that resulted from the second injury. In addition, an employer or its insurer had to notify the Fund "ninety-days before the expiration of the first one hundred four weeks of disability . . . of the pending case. . .", and furnish "a copy of the agreement or award together with all information supporting his claim . . ." along with "any medical reports that the custodian requests."
There are thousands of cases "on notice" with the Fund for which the Fund is not yet liable. That s, cases where the employee has sustained a second injury resulting in permanent impairment; is out of work for a period of time short of the threshold one hundred and four weeks of disability; and has returned to work.
In such cases, under the prior law, the employer provided appropriate notice with the view that if the employee has a relapse or in the future pursues further benefits, the employer will pay the remainder of the one hundred and four week period and then will transfer liability to the Fund. This allowed the employer to take advantage of the one hundred and four-week cap on liability if and when the case was further pursued by the injured employee.
Prior to the amendment, the law required no further procedural activity in order to activate that cap. Therefore, once notice was given, the employer's exposure was limited to one hundred and four weeks.
Pursuant to this practice, the plaintiff notified the Fund of all appropriate cases pending prior to July 1, 1995 in which the Fund was potentially liable to ensure that such pending cases were transferred to the Fund if and when the employees reached the one hundred and fourth week of disability. Because of this, employers and insurers have not separately filed or indexed second injury cases. Files are recalled simply by the employee's name at the time he or she sustains further disability.
The Act now provides that the time for filing claims with the Fund is limited to within three years from the date of injury instead of within ninety days prior to the one hundred CT Page 14060 and fourth week of disability.
The amendment which has changed the system reads in pertinent part as follows:
 (e) All claims for transfers of injuries for which the [second injury] fund has been notified prior to July 1, 1995, shall be deemed withdrawn with prejudice, unless its employer or its insurer notifies the custodian of the fund by certified mail prior to October 1, 1995, of its intention to pursue transfer pursuant to the provisions of this section. P.A. 95-277 § 3.
It was administratively difficult to locate all pending second injury cases by the October 1, 1995 deadline because it requires physically going through every file to determine if it is subject to the Act.
Law
"Workmen's [sic] Compensation Acts such as ours are founded upon the theory of a contract existing between a workman and employer, an implied consideration of which is provision for compensation for injury to the workman arising in the course of his employment . . . The statute is remedial in character and its provisions are to be broadly construed to effectuate its purpose." Powers v. Hotel Bond Co., 89 Conn. 143,145-146.
I Retroactivity
"[A]s regards statutes that are general in their terms and affect matter [sic] of procedure, the presumption is that they are intended to apply to" all matters whether pending or not. Reese v. Reese, 136 Conn. 191, 194. But " [e]ven if a statute is procedural it will not be applied retroactively if considerations of good sense and justice dictate that it should not be so applied." Carvette v. Marion Power ShovelCo., 157 Conn. 92, 96,
Good sense and justice do not dictate that three months is an impossible time frame for plaintiff to comply with the CT Page 14061 statute. The plaintiff has not sustained its burden of proof on that issue. See Jones Destruction, Inc. v. Upjohn,161 Conn. 191, 194-197.
II Requirements
In order to support a temporary injunction the plaintiff must prove that it has no adequate remedy at law, that it will suffer irreparable injury if the injunction is not granted and that at the conclusion of the matter it would more likely than not prevail. Even if all of those are proven the court must still balance the equities.
A. Adequate Remedy at Law
The plaintiff might be said to have an adequate remedy at law under section 9 of the public act because that section allows employers and insurers to appeal. It also provides that while the appeal is pending the employer or insurer shall pay the amount of the award to the claimant. Subsection (f). Subsection (g) of that section goes on to provide that if the employer's or insurer's appeal is successful the claimant will pay back the monies paid to him. There is no way to guarantee such payment.
For a right to legal action to be considered in the context of an application for an injunction it must be "as complete and beneficial as the relief in equity." Beach v.Beach Hotel Corporation, 117 Conn. 445, 453. Plaintiff's right to legal action does not rise to that level.
B. Irreparable Injury
Plaintiff in its memorandum of September 27, 1995 states that its irreparable injury under the Act[1] will be "that [compensation] cases pending [at the effective date of the Act] will not be subject to transfer [to the Fund] and will be deemed withdrawn with prejudice to the employer" and as a result the employer or the insurer will incur increased liability for compensation to those claimants hurt before July 1, 1995.
As of July 1, 1995 the plaintiff had noticed the Fund about a number of cases. Now Section 3(e) of the Act requires a separate renotice to the Fund in regard to each of those CT Page 14062 cases. If they are not so renoticed the claims are deemed withdrawn. Any claim which the plaintiff would be required to pay that was "deemed" withdrawn under the Act would result in irreparable harm to plaintiff.
The defendant would respond that plaintiff was given from July 1, 1995 to October 1, 1995 to find its cases requiring renotice and to issue the renotices to the Fund. The plaintiff has consistently argued that the number of cases, the renotification system in place for them and the limited time made timely renotice impossible. The court cannot so find.
C. Probability of Success
In this case of a constitutional challenge to a statute with lack of proof of irreparable injury this court cannot find that plaintiff will probably succeed upon final trial.
D. Balancing the Equities
In balancing the rights of all the parties together with the injured non-party workers' compensation claimants and the citizens of this state the court cannot find that the equities are in favor of the plaintiff.
Motion to dissolve is granted.
N. O'Neill, J.